## STATE OF MARYLAND *v.* HARRY MAGAHA

[No. 17, April Term, 1943.]

*Decided June 2, 1943.*

124

The cause was argued before SLOAN, C. J., DELAPLAINE, COLLINS, MARBURY, GRASON, MELVIN, and ADAMS, JJ.

*Robert E. Clapp, Jr., Assistant Attorney General,* with whom was *William C. Walsh, Attorney General,* and *J. Bernard Wells, State's Attorney,* and *Thomas M. Biddison, Assistant State's Attorney of Baltimore City,* on the brief, for the appellant.

*Eben J. D. Cross,* with whom was *Philip S. Ball* on the brief, for the appellee.

DELAPLAINE, J., delivered the opinion of the Court.

The State has brought this appeal to defend the constitutional validity of "General Rule Covering the Use of Streets," in the Traffic Ordinance of Baltimore City. The challenged section provides: "Reasonable care to be used. Nothing contained herein or omitted herefrom shall be construed or held to relieve any person using, or traveling or being upon any street, for any purpose whatever, from exercising all reasonable care to avoid or prevent injury through collision with all other persons and vehicles." Ordinances of Mayor and City Council of Baltimore, 1908-09, Ord. 139; Baltimore City Code, 1927 Ed., Art. 4, Sec. 57.

Harry Magaha was indicted in the Criminal Court of Baltimore City for violating this section. The specific charge in the indictment is that the defendant, on October 24, 1942, while operating a trackless trolley westbound on Federal Street, failed to exercise all reasonable care to avoid and prevent injury through collision with the motor ambulance being driven northbound on Wolfe Street by John Thomas Riley. The defendant

demurred to the indictment, and the appeal was taken from an order sustaining the demurrer and quashing the indictment.

The Criminal Court considered the section unconstitutional on account of failure to fix an ascertainable standard of guilt. It is an established doctrine of constitutional law that a penal statute creating a new offense must set forth a reasonably ascertainable standard of guilt and must be sufficiently explicit to enable a person of ordinary intelligence to ascertain with a fair degree of precision what acts it intends to prohibit, and therefore what conduct on his part will render him liable to its penalties. A statute which either commands or forbids the doing of an act in terms so vague that persons of ordinary intelligence must necessarily guess at its meaning and differ as to its application violates the constitutional guarantee of due process of law. *Commonwealth v. Zasloff*, 338 Pa. 457, 13 A. 2d 67, 128 A. L. R. 1120; *Connally v. General Construction Co.*, 269 U. S. 385, 46 S. Ct. 126, 70 L. Ed. 322; *Lanzetta v. New Jersey*, 306 U. S. 451, 59 S. Ct. 618, 621, 83 L. Ed. 888; *Daniel Loughran Co. v. Lord Baltimore Candy & Tobacco Co.*, 178 Md. 38, 47, 12 A. 2d 201. But it is well settled that a penal statute or ordinance should not be held void merely because juries may differ in their judgments in cases brought thereunder on the same state of facts. In 1913 the Supreme Court of the United States, in upholding the Sherman Anti-Trust Act, 15 U. S. C. A., Secs. 1-7, 15 note, laid down the rule that a statute is not void for indefiniteness merely because it casts upon a person the risk of rightly estimating a matter of degree. Justice Holmes emphasized in that opinion: "But * * * the law is full of instances where a man's fate depends on his estimating rightly, that is, as the jury subsequently estimate it, some matter of degree. If his judgment is wrong, not only may he incur a fine or a short imprisonment, as here; he may incur the penalty of death. * * * If a man should kill another by driving an automobile furiously into a crowd, he might be con-

victed of murder, however little he expected the result.
* * * If he did no more than drive negligently through
a street, he might get off with manslaughter or less. * * *.
And in the last case he might be held although he him-
self thought that he was acting as a prudent man should."
*Nash v. United States,* 229 U. S. 373, 33 S. Ct. 780, 781,
57 L. Ed. 1232. In the following year Justice Holmes
amplified his view in the Nash case as follows: "That
deals with the actual, not with an imaginary condition
other than the facts. It goes no further than to recog-
nize that, as with negligence, between the two extremes
of the obviously illegal and the plainly lawful there is
a gradual approach, and that the complexity of life
makes it impossible to draw a line in advance without
an artificial simplification that would be unjust. The
conditions are as permanent as anything human, and a
great body of precedents on the civil side, coupled with
familiar practice, make it comparatively easy for com-
mon sense to keep to what is safe." *International Har-
vester Co. v. Kentucky,* 234 U. S. 216, 34 S. Ct. 853, 855,
58 L. Ed. 1284.

Following the authority of the Nash case, the Supreme
Court sustained a conviction of manslaughter under an
Oregon statute providing that every person operating
a motor vehicle shall drive "in a careful and prudent
manner, * * * and in no case at a rate of speed that
will endanger the property of another, or the life and
limb of any person. Laws Or. 1921, c. 371, Sec. 2 (16);
*Miller v. Oregon,* 273 U. S. 657, 47 S. Ct. 344, 71 L. Ed.
825. Chief Justice Taft upheld the standard fixed by
the Oregon statute as follows: "Such standard for the
driver of an automobile on a highway is one to which
it is neither harsh nor arbitrary to hold those criminally
who operate such a possibly dangerous instrument of
locomotion, and who are or ought to be aware of what
degree of care is necessary to avoid injury to others
under the conditions that prevail on a highway. * * *
But it will not do to hold an average man to the peril
of an indictment for the unwise exercise of his economic

or business knowledge, involving so many factors of varying effect that neither the person to decide in advance nor the jury to try him after the fact can safely and certainly judge the result." *Cline v. Frink Dairy Co.*, 274 U. S. 445, 47 S. Ct. 681, 687, 71 L. Ed. 1146.

The appellee cited *United States v. L. Cohen Grocery Co.*, 255 U. S. 81, 41 S. Ct. 298, 300, 65 L. Ed. 516, 14 A. L. R. 1045, where the court invalidated the Lever Act, which undertook to punish any person who wilfully makes "any unjust or unreasonable rate or charge in handling or dealing in or with any necessaries." Act, Oct. 22, 1919, 41 Stat. 297. But in that opinion Chief Justice White explained: "Observe that the section forbids no specific or definite act. * * * It leaves open, therefore, the widest conceivable inquiry, the scope of which no one can foresee and the result of which no one can foreshadow or adequately guard against." In *Connally v. General Construction Co.*, 269 U. S. 385, 46 S. Ct. 126, 70 L. Ed. 322, the court likewise held unconstitutional an Oklahoma statute requiring that all persons employed by or on behalf of the State shall be paid "not less than the current rate of *per diem* wages in the locality where the work is performed." 61 O. S. 1941, Sec. 3. Nevertheless, it was subsequently held by the Maryland Court of Appeals that the Act providing that laborers on any public work within the City of Baltimore shall be paid "not less than the current rate of *per diem* wages in the locality where the work is performed," Code Pub. Loc. Laws, 1930, Art. 4, Sec. 516, did not contravene the Fourteenth Amendment of the Federal Constitution of the Maryland Declaration of Rights, because it is possible to ascertain the current rate of wages from a scale or standard generally established by common consent in the area which includes the site of the public work and the adjoining territory where such wages prevail. Judge Parke said in that case: "So the question is, fundamentally, one of fact, but the necessity for a fact to be proved does not make the fact so in issue indefinite or uncertain. * * * Wages * * *

tend to uniformity and stability and so to an average or ordinary rate, which varies somewhat from place to place. * * * A problem in construction of a statute is not to be abandoned until all the resources of the art are exhausted." *Ruark v. International Union of Operating Engineers,* 157 Md. 576, 584, 146 A. 797, 800.

The public policy of the State of Maryland in favor of criminal prosecution for reckless driving on the public highways of the State has been declared by the Legislature through the last twenty-nine years in the enactment of the statute making it a criminal offense to operate a motor vehicle recklessly or at a rate of speed greater than is reasonable and proper, having regard to the width, traffic and use of the highway, or so as to endanger the property and life or limb of any person. Acts of 1914, Chap. 832; Code, 1939, Art. 56, Sec. 196 (1). It is for the legislative branch of government to enact such measures as it deems desirable for the advancement of the public welfare, but the judiciary is the ultimate authority to determine whether constitutional restraints have been violated, confining itself to the question, not of legislative policy, but of legislative power. We adopt the rule supported by the great weight of authority in the United States that a statute prohibiting under penalty the driving of a motor vehicle on a public highway at a speed greater than is reasonable and proper, or so as to endanger life, limb or property is not void for indefiniteness. *Commonwealth v. Pentz,* 247 Mass. 500, 143 N. E. 322; *State v. Andrews,* 108 Conn. 209, 142 A. 840; *State v. Smith,* 29 R. I. 245, 69 A. 1061; *Usary v. State,* 172 Tenn. 305, 112 S. W. 2d 7, 114 A. L. R. 1401; *State v. Schaeffer,* 96 Ohio St. 215, 117 N. E. 220; *Schier v. State,* 96 Ohio St. 245, 117 N. E. 229; *Smith v. State,* 186 Ind. 252, 115 N. E. 943; *Gallaher v. State,* 193 Ind. 629, 141 N. E. 347, 29 A. L. R. 1059; *People v. Beak,* 291 Ill. 449, 126 N. E. 201; *People v. McMurchy,* 249 Mich. 147, 228 N. W. 723; *Mulkern v. State,* 176 Wis. 490, 187 N. W. 190; *Maxon v. State,* 177 Wis. 379, 187 N. W. 753, 21 A. L. R. 1484; *State v.*

*Waterman,* 112 Minn. 157, 127 N. W. 473; *State v. Goldstone,* 144 Minn. 405, 175 N. W. 892; *Schultz v. State,* 89 Neb. 34, 130 N. W. 972; *Ex Parte Daniels,* 183 Cal. 636, 192 P. 442, 21 A. L. R. 1172; *United States v. Henderson,* 73 App. D. C. 369, 121 F. 2d 75.

Like the statute forbidding reckless operation of motor vehicles in this State, the section of the Baltimore City Traffic Ordinance requiring reasonable care in the operation of other kinds of vehicles is a salutary measure, for it covers those cases where a law prescribing a maximum speed limit is not adequate. Reasonable certainty in view of the conditions is all that is required of a penal statute, and the courts will always give effect to the legislative intent when possible. In a Tennessee case, where an Act of the Legislature provided that "nothing in this Act shall be so construed as to authorize the sale of vinous or spirituous liquors on Sunday," Acts Tenn. 1846, c. 90, Sec. 3, the Supreme Court of Tennessee held that when the Legislature declares that a certain thing may be done which before that time was unlawful, and adds a proviso that nothing in the statute shall be so construed as to permit some matter embraced in the general provision to be done, this is a prohibition of such act, although before that time it was lawful. *State v. Eskridge,* 1 Swan, Tenn., 413. The Mayor and City Council of Baltimore, after providing in the Traffic Ordinance that "nothing contained herein or omitted herefrom" shall relieve any person from exercising all reasonable care, declared that any person violating any provision or regulation therein shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be fined not less than $1 and not more than $10. Baltimore City Code, Art. 4, Sec. 61. It is plain that the intention of the Mayor and City Council was to make a failure to exercise reasonable care a misdemeanor.

It is desirable, of course, that penal statutes and ordinances should be expressed in language as specific as the subject matter will permit, but it is obviously impossible to define some types of crime by a detailed description of

all possible cases that may arise. The prohibited act may be characterized by a general term without definition, if the term has a settled common-law meaning and a commonly understood meaning which does not leave a person of ordinary intelligence in doubt as to its purport, even though there may be in the definition of the term an element of degree as to which estimates of reasonable men might differ. *State v. Andrews,* 108 Conn. 209, 142 A. 840; *Pacific Coast Dairy v. Police Court,* 214 Cal. 668, 8 P. 2d 140, 80 A. L. R. 1217, 1223. An illustration of this principle is found in the decision that a statute forbidding any person to drive an automobile when intoxicated is not too indefinite to be enforceable merely because the statute fails to set up definite criteria of intoxication, because the condition of intoxication and its common accompaniments are so much a matter of general knowledge that definite and sensible effect may be given to the words of the statute. *Maryland & Pennsylvania R. Co. v. Tucker,* 115 Md. 43, 80 A. 688; *Cumberland & Westernport Transit Co. v. Metz,* 158 Md. 424, 149 A. 4, 565. Similarly the section now before us is as definite in its description as the subject matter will permit. The lack of reasonable care forbidden by the section is of such a nature that it would be impossible to describe the infinite variety of circumstances that may surround such cases. *People v. Mc-Murchy,* 249 Mich. 147, 228 N. W. 723, 728. The term "reasonable care" is a familiar expression in common speech and in the terminology of the law. Its accepted meaning is that degree of care which a person of ordinary prudence would exercise under similar circumstances. It is recognized, for example, that while an automobile is not such an inherently dangerous machine as to make the rule requiring extraordinary care in the use of dangerous instrumentalities applicable to such a means of conveyance, it may soon become dangerous in the hands of a reckless driver, and it is accordingly an established rule that every automobile driver is required to exercise that degree of care toward other travelers

which a person of ordinary prudence would exercise under similar circumstances. *Winner v. Linton,* 120 Md. 276, 281, 87 A. 674; *Whitelock v. Dennis,* 139 Md. 557, 561, 116 A. 68; *Spawn v. Goldberg,* 94 N. J. L. 335, 110 A. 656; 36 *Words and Phrases,* Permanent Edition, 265-278. There can be no doubt that the common law likewise requires an operator of a trackless trolley to exercise reasonable care in its operation on the streets. Consequently the average person, in considering this section of the ordinance, is not bound to speculate upon imaginary conditions, but can determine his conduct according to the actualities of life and by reference to a knowable criterion. The standard of "reasonable care" is a flexible but reasonably certain criterion by which the jury are enabled to form their decision upon all the facts and circumstances of each particular case. *Twyman v. Adkins,* 168 Va. 456, 191 S. E. 615, 619. As the section does not deprive any person of the ability to predetermine whether a contemplated action thereunder is criminal, but establishes a standard of conduct sufficiently definite to afford an ascertainable test of guilt, we hold that the section does not violate the due process clause of the Fourteenth Amendment of the Federal Constitution or Article 23 of the Maryland Declaration of Rights, which declares that no man ought to be deprived of his life, liberty or property but by the judgment of his peers or by the law of the land.

From this conclusion it follows that there is no merit in the allegation of the demurrer that the indictment is too vague to inform the defendant of the nature of the accusation. Since the indictment charges that the defendant violated the section, and also alleges the specific negligent act within the statutory description, there can be no doubt that the indictment is sufficiently definite. Undoubtedly an indictment must inform the defendant of the nature of the charge against him with reasonable certainty, so that he can prepare his defense, and also be able to plead the judgment thereafter as a bar to any subsequent prosecution for the same offense. But an in-

dictment charging the defendant with an act coming within the statutory description in the substantial words of the statute is sufficient. *Ledbetter v. United States,* 170 U. S. 606, 18 S. Ct. 774, 42 L. Ed. 1162; *Capone v. United States,* 56 F. 2d 927, *certiorari* denied, 286 U. S. 553, 52 S. Ct. 503, 76 L. Ed. 1288.

For these reasons we must reverse the order of the court below sustaining the demurrer and quashing the indictment.

*Order reversed and case remanded, with costs.*