RONALD BUTINA *v.* STATE OF MARYLAND

[No. 309, September Term, 1967.]

Decided June 7, 1968.

The cause was argued before MURPHY, C. J., and ANDER-SON, MORTON, ORTH, and THOMPSON, JJ.

*Robert J. Flynn* for appellant.

*Bernard L. Silbert, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County,* and *Benjamin R. Wolman, Assistant State's Attorney for Prince George's County,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

The appellant was found guilty of statutory arson by a jury in the Circuit Court for Prince George's County and sentenced to imprisonment for a term of 10 years.

I

The appellant was convicted of the crime proscribed by Md. Code (1967 Repl. Vol.) Art. 27, § 6, which provides in relevant part:

> "Any person who wilfully and maliciously sets fire to or burns or causes to be burned or who aids, coun-sels or procures the burning of any dwelling house * * * whether the property of himself, or of another, shall be guilty of arson, and upon conviction thereof, be sentenced to the penitentiary for not less than two nor more than twenty years."

At common law the felony of arson is the malicious burning of the dwelling house of another. Clark and Marshall, *Law of Crimes,* 6th Ed., § 13.09, p. 893; Perkins, *Criminal Law* (1957), Ch. 3, § 2, p. 172. The statute enlarges the common

law meaning of arson as by its provisions a person commits arson if he wilfully and maliciously either (1) sets fire to or burns or causes to be burned a dwelling house (and other property that is parcel thereto designated by the statute), or, (2) aids, counsels or procures the burning. Thus, although at common law a person not actually or constructively present who "aids, counsels or procures the burning" is an accessory before the fact, under the statute he is a principal to the arson. This was the conclusion reached by the Court of Appeals in *Wimpling v. State,* 171 Md. 362. The Court said that although it is consistent with the language of the statute that one may be guilty of arson if he has counseled the burning even though there has been no actual burning, page 370, it may be assumed that in the use of the word "counsel" the legislature meant to "counsel" the burning or setting fire to a dwelling house which in fact has been burned or which has been set on fire. Thus while at common law one who aids, counsels or procures another to wilfully and maliciously set fire to a dwelling house is an accessory, by the statute he is made a principal, his act in so counseling, aiding, or procuring is in itself a substantive offense, page 371, and he is subject to the same punishment as though he himself had actually perpetrated the burning, page 369. Since under the statute two separate substantive offenses of arson are defined, it follows that to be validly convicted a person must be properly charged with the offense of arson which the evidence shows he committed. So if he, in fact, set fire to or burned or caused to be burned a dwelling house, he cannot be convicted on a charge that he aided, counseled or procured the burning, and vice versa. But in considering the offense which he in fact committed, consideration must be given to the distinction at common law between principals and accessories, for even though the statute makes a person a principal who at common law would be an accessory before the fact to arson,[1] we think that a person may be convicted of setting fire to or burn-

---

1. The arson statute is thus distinguished from the statutes pertaining to robbery and robbery with a deadly weapon, Md. Code (1967 Repl. Vol.) Art. 27, §§ 486 and 488. Sections 486 and 488 do not define the crime of robbery but merely provide a statutory penalty for common law robbery and accessory before the fact to that crime and a statutory penalty more severe when the robbery

ing or causing to be burned a dwelling house only if he would
have been a principal at common law and that he may be con-
victed of aiding, counseling or procuring the burning only if he
would have been an accessory before the fact at common law.
Under the common law, parties to a felony are classified as prin-
cipals or accessories. Principals in the first degree are those
who commit the deed as perpetrating actors, either by their own
hand or by the hand of an innocent agent. Persons present, ac-
tually or constructively, aiding and abetting the commission of
the crime, but not themselves committing it, are principals in
the second degree. Accessories before the fact are those per-
sons who abet, procure, counsel, or command the deed perpe-
trated, but who are not present, actually or constructively, at
such perpetration. *Agresti v. State,* 2 Md. App. 278, 280. But
in this State there is no practical distinction between principals
in the first and second degree. *Vincent v. State,* 220 Md. 232,
239, note 1. If the evidence shows that an accused was present,
actually or constructively, aiding and abetting the setting of the
fire or the burning or the causing to be burned, even though
he did not commit the crime himself, thus being a principal in
the second degree, he could properly be convicted on a charge
that he wilfully and maliciously set fire to or burned or caused to
be burned the property. See *Thornton v. State,* 232 Md. 542,
544; *Veney v. State,* 225 Md. 237, 238. We do not find it to be
the law of this State, that an accused must be specifically charged
as a principal in the second degree.

---

or attempted robbery or accessory to robbery is committed with
a dangerous or deadly weapon. *Darby v. State,* 3 Md. App. 407, 413.
An accessory before the fact to robbery is not made a prinicpal
thereby nor is a person who attempts to rob with a deadly weapon
or who is an accessory thereto. *Agresti v. State,* 2 Md. App. 278,
282. In *Agresti,* at 281-282, we said that at common law, an indict-
ment must charge a person correctly as principal or accessory
according to the facts and on an indictment charging a person as
a principal there could be no conviction on evidence showing that
he was merely an accessory and vice versa. And we noted that
even if a statute makes an accessory before the fact a principal
and subject to punishment accordingly, unless the statute provides
that an accessory before the fact may be charged or indicted as
a principal, one who is an accessory cannot be convicted on an
indictment charging him as a principal. Code, Art. 27, § 6 con-
tains no reference to the manner of charging the offense.

The indictment returned against the appellant charged under the statute that he "* * * did feloniously, wilfully and maliciously set fire to and burn a certain dwelling house, the property of James Henry Thomas * * *." He was charged, therefore, with the first offense proscribed by the statute and the charge would be proper if the evidence showed that he was either a principal in the first or second degree at common law, that is to say if he himself perpetrated the crime or was present, actually or constructively, aiding or abetting its commission. The charge would not permit the conviction if the evidence showed that he was an accessory before the fact at common law (the second offense proscribed by the statute), that is to say if he aided, counseled or procured the burning without being actually or constructively present. The appellant alleges that by the evidence the acts he committed showed him to be an accessory before the fact at common law and he contends that, therefore, the indictment was "defective and should have been quashed." Even if the evidence adduced at trial so showed, the appellant was not entitled to have the indictment dismissed. The indictment charged him with acts coming fully within the statutory description, in the substantial words of the statute, sufficient to apprise him with reasonable certainty that he was accused of committing arson. *Dortch and Garnett v. State,* 1 Md. App. 173, 176; *Wimpling v. State, supra,* 368. It was sufficient on its face. The contention as framed and argued goes to the sufficiency of the evidence before the grand jury but we held in *Wilson v. State,* 4 Md. App. 192, that an indictment may not be challenged on the ground that there was insufficient evidence before the grand jury. The proper question here is whether there was a variance between the *allegata* and the *probata.* If so, the appellant would have been entitled to the grant of his motion for judgment of acquittal made at the conclusion of all the evidence, but not to a dismissal of the indictment. So we must review the evidence before the jury.

About 1:00 A.M. on 10 July 1967 Norman M. Thomas was in bed in his frame dwelling house at 611 8th Street, Laurel, Md. when he heard the motor of a car racing. He got up and, looking out the window, saw "an old model black car maybe

2. It appears that 8th Street is also known as Laurel Grove Avenue. The dwelling was situated on a corner lot at the intersection

a Dodge or Plymouth" on the road alongside the house.[2] He went back to bed. "Then I heard this fuming sound, like a whoosh, and when I looked out the back window, that is when the flames were all over the back of the house." He ran downstairs through the kitchen and saw the flames coming through the kitchen window. "I knew then the house was on fire." He ran out the front door and saw a "white man run across the road to the automobile." The car drove away, proceeding west toward uptown Laurel. "I hollered back in the house to my young daughter and told her to try to get the kids out of the house and there was fire and they were all asleep." He was able to put the fire out with the help of a neighbor.

Merle Cole, the night manager of a gasoline station in Laurel, testified that in the early morning hours of 10 July an old Plymouth car came into the station. "They came in * * * said they were out of gas, asked if I had a can and I told them yes, and I went to my car and got a can * * * and filled it with gas (two gallons) and gave it to them." The can was put in the car; the gas was not poured into the car's gasoline tank. He identified a can found by the police near the scene of the arson as similar to the can put in the car.

Richard Reedy was in the station when the car pulled in. He recognized the car as belonging to a Bill Neilson but when he went over to the car, he did not see Neilson. He saw two men in the car, and identified the appellant as the driver. They got two gallons of gas in a can and pulled out.

Officer Gerald Hall of the Laurel Police Department responded to a call in the morning hours of 10 July and went to the Thomas house. Thomas showed him the damage to the house and gave a description of the car "as early model 1949 or 1950 * * * Dodge or Plymouth, black in color." The officer knew that Neilson owned a car answering that description. The officer went to a shopping center near the intersection of Fourth and Montrose Avenues where he had seen the car on other occasions. As he drove around the shopping center he saw a black 1952 Plymouth pull up at the intersection. He asked the appellant, who was driving, for his operator's license and the

of 8th Street and Route 198, also known as Talbott Avenue, the road alongside the house.

registration card. The appellant showed him his operator's license and at first said he did not have the registration card, but then he found it in the glove compartment. The appellant was not arrested.

Officer Wallace Mitchell of the Laurel Police Department also responded to the call and went to the Thomas house. He observed the damage and made a report. About 40 minutes after he left Thomas he responded to a call and went to the intersection of Fourth and Montrose Avenues. Hall, the appellant, and another man were standing by a 1952 Plymouth. The appellant showed the officer his operator's license and a registration card in the name of Janice Neilson. The appellant was permitted to leave. He had made no statement regarding the fire.

Officer Juergen Ervin of the Laurel Police Department testified that the investigation of the fire was turned over to him by the Chief of Police on 14 July. He found that the husband of Janice Neilson had not been interviewed, went to his residence on 15 July and talked to him in the presence of Mrs. Neilson. He went back later that day and requested Neilson to accompany him to the police station. At the station Neilson made a statement and thereafter was charged with arson. Warrants charging arson were obtain for the arrest of the appellant and two other men. The appellant was located about 7:30 P.M. on 15 July near his home. Ervin read the warrant to him and the appellant read it himself. Thereupon Ervin "advised him he had a right to remain silent. Anything you say can be used against you in a court of law. You have a right to talk to a lawyer and to have him with you during questioning. If you cannot afford a lawyer one will be appointed for you before a statement is taken if you wish. If you decide to give a statement you still have the right to stop at any time so you may talk to a lawyer." Ervin asked him if he understood his rights and what had just been explained and he replied that he did. He was asked if he was willing to make a statement without the presence of a lawyer and replied, "Yes." He was asked, "Have any promises, threats or inducements been made to pressure or coerce you into making this statement" and he replied, "No." Ervin took the appellant to the police station. On the way Ervin said nothing to the appellant and the appellant said

nothing to Ervin. At the station a document was read to the appellant again stating the rights set forth in *Miranda v. Arizona*, 384 U. S. 436. It concluded:

> "Waiver of rights. I have read the statement of my rights and understand what my rights are. I am willing to make a statement and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me. No pressure or coercion of any kind has been used against me."

The appellant signed this document and then gave the police a statement which was reduced to writing and signed by him. At the trial, counsel for the appellant cross-examined Ervin as to the voluntariness of the statement but offered no evidence with regard thereto. The trial court found that the statement was given by the appellant "voluntarily, knowingly and intelligently" and admitted it in evidence.[3] The statement showed that the appellant was asked by the police to tell what happened on 10 July with reference to the burning of Thomas' dwelling. He said:

> "A. On early Monday morning about 1:00 A.M. 7-10-67, I met Paul White, Neilson, Don Kemper, and Pressley,[4] who were in a 1952 Black Plymouth, owned by Neilson, at the Laurel Swimming Pool, at the end of Main St. At that time Neilson asked me to go to a party, at which time I mounted Neilson's vehicle, and took control of same, as Neilson asked me to Drive his vehicle. We left the Pool, as we arrived at Main and 9th St, Paul White said, make a right here at 9th St, and go down to the Grove area, When we arrived at the Laurel Grove Ave 8th St and Rt 198

---

3. At an evidentiary hearing prior to trial the hearing judge also found that the statement had been voluntarily made.

4. William Neilson, Marcus Pressley and Paul David White were jointly indicted with the appellant. However the appellant was tried alone.

(Talbott Ave.) White said pull over, we are going to Set the House on Fire, meaning 611 8th St, Laurel Md. I told him no, dont set the House on Fire, because I knew Mr. Thomas. Paul then said pull over I and Kemper, we have to go to the Bath room I stopped the vehicle on Rt 198 (Talbott) and 8th St, Laurel Md. When I had stopped, Paul White and Don Kemper left the vehicle, and Pressley was standing out side of the vehicle, Several minutes later I observed a big flash on the house of 611 Eight St., same started to burn, and I then observed Paul White and Don Kemper come running across the street from the Burning House towards the vehicle. After Paul White and Don Kemper jumped into the car, Paul White said lets get out of here. We drove down Rt 198 towards Harding Pontiac, down Sandy Spring Rd. and stopped by the Laurel Police Station. We left Montgomery St, and then later drove past 611 8th St, which is the House Don Kemper and Paul White set on Fire. After we drove past the Fire we went to 1008 8th St, Laurel Md, the Residence of Mr. Patterson. I wanted to stop at the Fire, however the other guys in the vehicle, Paul White, Don Kemper, Pressley and Neilson said not to stop, they told me to continue on. After we arrived at 1008 8th St, Pressley and myself left in Neilsons Car to get some more Beer, and to see if some other guys would come to the party, As I drove by 4th St and Montrose Ave, Laurel Md, I was stopped by a Laurel Police Officer, after the Officer had talked to me and Pressley they then let us go. I then walked home, and Pressley walked home. I left Neilson vehicle the 1952 Plymouth parked on Rt 198 (Talbott Ave).

Q. When you left the Fire at 611 8th St, Laurel did Paul White or Don Kemper say, who set the Fire?

A. Don Kemper said he poured the Gasoline all over

the House (611 8th St) and got it real good, Paul White then said good. I remember Kemper saying that he had gasoline on His boots', and he tried to wash it off When we were at 1008 8th St, Laurel Md.

Q. Do you know what happened to the gas can?

A. No. I don't, I didn't even know they had the gas when they pickt me up earlier."

No evidence was proffered in behalf of the appellant.

It is firmly established that the test in reviewing the sufficiency of the evidence in a jury case is whether any relevant evidence was given to the jury which could have sustained the conviction. *Tillery v. State*, 3 Md. App. 142. Applying this test, we have no difficulty in determining that the evidence was ample for the jury to find that the appellant was guilty of arson. There is no question as to the proof of the *corpus delicti*. See *Gamble v. State*, 2 Md. App. 271. The fire did occur and it is a clear inference from evidence independent of the confession that it was wilfully and maliciously set. See *Whitmer v. State*, 1 Md. App. 127; *Howard v. State*, 1 Md. App. 379. We think it clear also that the evidence was sufficient to establish the criminal agency of the appellant. He was driving the car when a two gallon can of gasoline was purchased immediately before the crime and placed in the car.[5] By his own statement he drove the actual perpetrators to the scene of the crime, was actually present in "close proximity or contiguity" in a position to assist if necessary or to watch or prevent interference or detection or to encourage the commission of the crime at the moment of its commission and drove the car in which the actual perpetrators departed from the scene of the crime. The evidence was sufficient for the jury to find that he was a principal in the second degree and to find him guilty of the offense the actual perpetrators committed. *Thomas v. State*, 2 Md. App. 502; *McEn-*

---

5. Although in his statement he denied knowing that his companions had "any gas," discrepancies between a confession and testimony as to the circumstances of the crime go only to the weight of the evidence. *Whitmer v. State*, 1 Md. App. 127. The jury was under no obligation to believe the denial. See *Sanders v. State*, 2 Md. App. 484; *Dunlap v. State*, 1 Md. App. 444.

*tire v. State*, 2 Md. App. 449, 453. Therefore, since he was, by the evidence, a principal and not an accessory before the fact, the allegation in the indictment was proper and there was no variance between the charge and the proof. We find that the motion for judgment of acquittal was properly denied and that the evidence was sufficient to sustain the conviction.

## II

The appellant complains that his statement was improperly admitted in evidence. He does not allege on appeal that his statement was obtained without compliance with the *Miranda* safeguards or that it was the result of promises, inducements, threats or physical violence. He urges, however, that the attention of the police was focused on him and Neilson as the result of an illegal arrest of him. He alleges that when the police stopped the car he was driving and asked for his operator's license and the registration card, he was illegally arrested.[6] The police obtained his name thereby and the registration card disclosed that the car belonged to Janice Neilson. This led the police to her husband, William Neilson, who gave a statement to the police, and it was the confrontation of him with Neilson's statement that caused him to give a statement. He concludes therefrom both that the indictment was found on the basis of evidence illegally obtained and that his statement was inadmissible as "fruits of the poisonous tree."

With regard to the indictment, it is the well settled rule that the competency of testimony before the grand jury will not be inquired into by the courts and is no ground to dismiss the indictment. *Costello v. United States*, 350 U. S. 359, 363; *Pick v. State*, 143 Md. 192, 196; *Wilson v. State, supra.*

With regard to the statement given by the appellant, it is not necessary for us to determine whether the initial encounter of the appellant and the police was an accosting or an arrest or, if it were an arrest, whether there was probable cause therefor. The question of the legality of the arrest is immaterial as no

---

6. However during his testimony at the perliminary hearing he said that no charges were placed against him at that time, that the officers said nothing about placing him under arrest, and that he was, in fact, not placed under arrest.

"fruits" seized thereby were received into evidence. *Crosby v. State,* 2 Md. App. 578, *Hutchinson v. State,* 1 Md. App. 362. The "fruits" of an illegal arrest refer to tangible evidence seized. *Walker v. State,* 237 Md. 516. A statement or confession is not a "fruit" of the arrest in this context. *Howard v. State,* 1 Md. App. 379; *Stackhouse v. State,* 1 Md. App. 399. *Wong Sun v. United States,* 371 U. S. 471, stating the federal exclusionary rule that any evidence obtained as a result of an illegal arrest is tainted as the fruit of a poisonous tree, does not control prosecutions in the State courts. *Dailey v. State,* 239 Md. 596; *Prescoe v. State,* 231 Md. 486; *State v. Hill,* 2 Md. App. 594. In any event, although the registration card of the car driven by the appellant and displayed to the officer showed that the car was registered in the name of Janice Neilson, Officer Hall was aware prior to that time that Neilson had a car answering the description of the one seen by Thomas at the time of the fire and had gone to look for it. Also the name of the registered owner could have been readily traced by the police from the license tags. There is no merit in the contention that the appellant's statement was rendered inadmissible because he was identified by the police at the time of his initial encounter with them or because the registration card linked Neilson to the appellant. Nor do we find merit in the allegation that the appellant's statement "was coerced and illegally obtained otherwise through the medium of Neilson's statement, which was obtained contrary to the requirements of *Miranda*." Before he made his statement the appellant was confronted with Neilson's statement. As to what effect confrontation with illegally seized evidence has on the admissibility of a confession is one of fact and not a matter of law. The Court of Appeals said in *McChan v. State,* 238 Md. 149, 159, cert. den. 384 U. S. 1021 (vacated as to one defendant on another point, 384 U. S. 893) :

> "In *Fahy v. Connecticut,* 375 U. S. 85 (1963), where illegally obtained evidence was held to be prejudicial, the Supreme Court found that the accused should have had an opportunity to show that his admissions were induced by being confronted with illegally obtained evidence. *Fahy,* does not, however, compel the exclusion of a confession unless it appears that the accused was

> shown illegally seized evidence and that such confrontation did in fact induce the confession. Voluntariness, therefore, is still the crucial test for determining the admissibility of a confession."

See *Dailey v. State, supra,* 600. Even on the assumption that Neilson's statement was illegally obtained,[7] there was no sufficient showing here that the confrontation did in fact induce the appellant's statement,[8] or that it was, in fact, not voluntarily made. We do not think that the trial court's finding on the evidence as to the factual question of the effect of the confrontation of the appellant with Neilson's statement was clearly erroneous. Md. Rule, 1086.

### III

The appellant complains that he was denied the assistance of counsel. As we understand his first contention in this regard, he urges, on the premise that the stopping of the car driven by the appellant was an arrest, that he was then entitled to counsel. Accepting the premise, *arguendo,* that the appellant was then arrested, we know of no authority holding that the constitutional rights of a person are violated by the absence of counsel at his arrest. *Cherrix v. Warden,* 1 Md. App. 65. The appellant made no statement at that time offered in evidence against him and *Miranda v. Arizona, supra,* cited by the appellant, is not applicable. *Crosby v. State,* 2 Md. App. 578; *Dixon v. State,* 1 Md. App. 623. Nor is *Escobedo v. Illinois,* 378 U. S. 478, applicable. *Reeves v. State,* 3 Md. App. 195.

---

7. Prior to the appellant's trial there was an evidentiary hearing on a motion filed by Neilson to suppress the statement made by him. The hearing judge found that the *Miranda* safeguards had been observed and that the statement was freely and voluntarily made. The issue was also raised at the appellant's trial and the trial court found that Neilson's statement "complied with the provisions of the law."

8. At a preliminary hearing at which the hearing judge found the appellant's statement to have been voluntarily made, the appellant testified that the police asked him " * * * would you like to make a statement, said Mr. Neilson had done made statements against me saying that I was involved in one arson charge." He said the police showed him some papers, saying they were Neilson's statement but he did not ask to read it. The appellant did not testify on the matter at the trial.

His second contention with respect to the assistance of counsel is that there was a failure "to timely appoint counsel at the preliminary hearing." The contention is based upon the allegation that the preliminary hearing "inherently" was a critical stage of the proceedings against him. The contention was fully answered in *Hannah v. State,* 3 Md. App. 325 and in prior opinions of this Court. See *Timbers v. State,* 2 Md. App. 672; *Crosby v. State, supra; Crumb v. State,* 1 Md. App. 98. It appears that the appellant did not enter a plea at the preliminary hearing nor was anything that transpired there entered in evidence against him at his trial. Neither *Pointer v. Texas,* 380 U. S. 400, relied on by the appellant, nor *White v. Maryland,* 373 U. S. 59 is apposite.

The contentions as to the assistance of counsel are without merit.

*Judgment affirmed.*