## WILLIAM A. HUGHES *v.* STATE OF MARYLAND

[No. 250, September Term, 1968.]

*Decided March 19, 1969.*

*Gerald A. Smith* for appellant.

*Donald Needle, Assistant Attorney General,* with whom were

*Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *George J. Helenski, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

MURPHY, C.J., delivered the opinion of the Court.

Appellant, together with three codefendants—Gerry White, Monroe Clark and Melvin Gorham—was indicted for "wilfully and maliciously" setting fire to and burning the storehouse at 601 N. Edgewood Street in violation of Maryland Code, Article 27, Section 7. In a joint trial before the court sitting without a jury, White, Clark and Gorham were acquitted, while appellant was convicted and sentenced to four years under the jurisdiction of the Department of Correction. He contends on this appeal that the evidence was insufficient to support his conviction.

On April 10, 1968, in the wake of several days of rioting that occurred in Baltimore City following the assassination of Dr. Martin Luther King, a fire was discovered in the vacant first floor building premises located at 601 N. Edgewood Street. Before the rioting, a grocery store had been in operation in the first floor of the building, but the stock had been removed sometime during the rioting and the windows of the store had been boarded up. On the day of the fire, the front door of the store had been left open and, according to the testimony of Margaret Hawshaw, who resided across the street from the burned store, people went in and out of the store throughout the day "just looking in and see what they could pick up off the floor"; and that "the kids had been running in and out throwing stuff all over the place," including "paper towels and napkins and cans and old pieces of wood that I guess the man left in the store when he was boarding up the door."

Mrs. Hawshaw testified that she observed three boys standing fifteen feet from the store and later saw one of them come out the front door with a stick in his hand which resembled a big table leg with ridges in it. She stated that he walked off with the other three boys and about five or ten minutes later she saw smoke coming from the store. She was unable to iden-

tify any of the boys and admitted that she had not watched continuously from the time the boys left the store until she looked again and saw the smoke.

Corinne Osby, second floor tenant of the burned premises, testified that she observed three boys enter the store, one of whom she identified as the appellant. She stated that before appellant entered the store, he was carrying a stick similar to a table leg; that about five minutes after the boys entered the store they came out; that she saw no one else enter the store after the boys had left; and that about seven or eight minutes thereafter she smelled smoke coming from the store.

Captain Lee Melvin of the Baltimore City Fire Department answered a call to 601 N. Edgewood Street at 1:06 p.m. on April 10. He testified that the fire had been burning twenty or thirty minutes before he arrived; that it was in the rear of the meat counter in a "pail of debris" about three feet in diameter, the debris consisting of cardboard, rags and papers; that it took about ten minutes to extinguish the fire, which had burned through the plywood floor into the subflooring; and that the fire also burned some wooden shelves. Captain Melvin stated that there were "no apparent causes of ignition visible," that there were no motors, electrical wiring, heaters, or "things of that sort" near the fire, and that he was unable to determine how the fire was ignited.

Matilda Creamer, owner of the burned premises, testified that in addition to the burning of the floor and counters, the walls and ceiling had been scorched. She stated that the building had been rewired approximately seven months prior to the fire, and also testified to finding a "piece of the leg that was laying beside the meat saw," which she further described as a table leg that was long and had grooves in it. A piece of wood, which Mrs. Creamer brought to the trial at the request of the police, was received in evidence as State's Exhibit 1, it appearing that this piece of wood was not the table leg found by her near the meat saw.

Officer Robert Greene testified that he arrived at the fire at 1:07 p.m.; that twenty minutes after receiving certain information at the scene, he confronted appellant, White, Clark, and Gorham about two blocks from the fire; that they all had black

scarfs around their heads; and that appellant was carrying a table leg, which he tried to discard when the officer approached. Greene testified that he took the table leg back to the store and was able "to match up what had been cut on that saw." Shown a circular piece of wood, State's Exhibit 1, Officer Greene stated, in effect, that he had matched the table leg taken from appellant with the circular piece of wood. The table leg which he recovered from appellant was not produced or offered into evidence.

Bernice Tucker, a clerk in a store near the scene of the fire, testified that just before the fire, appellant and two other boys were in her store with sticks; that appellant spoke about "black power" and cursed her; that the boys left and walked toward the grocery store and five minutes thereafter she saw smoke coming from the store.

Appellant's companions Gorham and Clark each testified that neither they nor the appellant ever entered the burned store, although each admitted that appellant looked into the store and stayed behind while they went on. Each testified that appellant had a stick in his hand when he approached the store.

Appellant testified that on the day of the fire he went to the store at 601 N. Edgewood Street to buy a soda when he discovered it was empty; that he picked up a stick just inside the doorway, but did not enter the store; that he was there about four or five minutes with Clark and Gorham; and that he could see that there were papers and shelves inside the store. He admitted wearing a black arm band as a sign of mourning the death of Martin Luther King, and also admitted cursing Bernice Tucker. He denied speaking of "black power," and also denied having a stick when arrested but stated that Officer Greene picked up a stick from the ground near him which looked like a table leg. He testified that he couldn't be sure whether it was the same stick which he had picked up at the store and which he had later left on the porch of his home.

To establish the *corpus delicti* of the statutory crime of willfully and maliciously burning a storehouse, it must be shown that the fire did occur and that it was willfully and maliciously set. See *Butina v. State,* 4 Md. App. 312. In other words, the burden is on the State to show that the burning was with a

criminal design, and where nothing except the burning appears, the law presumes it to have been accidental or from natural causes. *Bollinger v. State,* 208 Md. 298. Proof of the *corpus delicti* is thus distinct from evidence which establishes the connection of the accused with the crime, though proof of the latter fact usually establishes the former. *McDowell v. State,* 231 Md. 205; *State v. Millmeier,* 72 N. W. 275 (Iowa); *State v. Wenger,* 38 P. 2d 339 (Wyo.). While the *corpus delicti* must be proved beyond a reasonable doubt, *James v. State,* 5 Md. App. 647, it was recognized both in *Bollinger* and *McDowell* that proof of the *corpus delicti* in an arson case is usually a difficult matter, as a burning is almost invariably done in a clandestine manner, so that the prosecution usually must depend on circumstantial evidence. The character of the evidence to prove the *corpus delicti* and its sufficiency for that purpose, depend largely upon the circumstances of each particular case. *Bollinger v. State, supra,* at page 305. In establishing that the fire was of incendiary origin, *viz.,* that it was willfully and maliciously set, it is not essential to show that some highly combustible material was employed. Incendiarism may be shown by the manner in which the fire was burned, by the presence of an odor of flammable liquid, by the fact that combustible materials or flammable liquids or their containers were found on the burned premises, by demonstrating the improbability that the fire had resulted from accidental or natural causes, by evidence of threats to destroy the property, by the isolation of the premises, by the absence of any natural cause for the fire, by the precautions taken to avoid a fire, or other facts of similar import tending to show that the fire had an incendiary origin. See 5 Am. Jur. 2d, *Arson,* Section 48, *et seq.*; Curtis, *Law of Arson.*

In *Bull v. State,* 239 Md. 101, a case involving the burning of a barn, the *corpus delicti* was established by evidence showing that gasoline had been poured over the floor, that straw within the barn had been saturated with gasoline and that a plugged-in electric light cord, its bottom end charred, was found lying in the burned straw. In *Jones v. State,* 237 Md. 628, a case involving the burning of a dwelling house, the *corpus delicti* was established by evidence showing that gasoline had been poured under the door of the house, together with expert tes-

timony that the fire had been caused by the use of a "flam-
mable agent." In *Nicholson v. State,* 233 Md. 391, a case in-
volving the burning of an empty dwelling house, the entrances
to which had been nailed shut, the *corpus delicti* was estab-
lished by expert testimony that the fire "was of incendiary origin
because the gas and electricity in the house had been shut off,
a door had been forced, a five-gallon can designed to trans-
port gasoline, in which there had been a petroleum liquid, had
been found on the premises, and the char and depth of the fire
in certain areas of the second floor, where the fire started, in-
dicated that flammable liquid had been poured on the floor to
help start the fire and maintain its intensity." In *Bollinger v.
State, supra,* the *corpus delicti* was established by the confes-
sion of the accused that he set fire to the barn by setting a
match to gasoline, there being evidence corroborative of the
confession showing that the owner of the burned premises had
not been present for an appreciable time prior to the fire, that
he did not smoke, and that the building had been recently wired
by an electrician and "apparently the wiring was all right." In
*McDowell v. State, supra,* a case involving the burning of an
apartment, there was testimony of one accomplice to the effect
that the defendant had set the fire, coupled with expert testi-
mony that the fire was not due to spontaneous combustion or
faulty wiring or to natural causes. In *Hannah v. State,* 3 Md.
App. 325, a case involving the burning of a church, there was
expert testimony that the fire was of incendiary origin and that
it did not result from natural causes.

In the present case, Captain Melvin testified that he could
not determine how the fire was ignited. Viewed negatively, his
testimony tended to establish, at most, that the fire was not
caused by faulty wiring or by electrical appliances. There was
no indication from his testimony whether the "pail of debris"
in which the fire originated appeared to have been stacked, bon-
fire fashion, on the floor of the store. Thus, there was no direct
evidence tending to show that the fire was of incendiary origin.
And unlike *McDowell,* there was no expert testimony excluding
the possibility that the fire originated from spontaneous combus-
tion or other natural or providential causes.

On the other hand, the evidence showed that the store was

burned in the wake of a large-scale riot which provoked great destruction. There was evidence before the trier of fact which, if believed, showed that appellant was within the store approximately ten minutes prior to the time the fire was first discovered. This evidence, coupled with appellant's denial of such presence, his denial that he advocated "black power," and his denial that he had a stick with him when arrested, tends to show guilty knowledge and hence to indicate his criminal involvement with the origin of the fire. In this connection, we note that the evidence of appellant's possession of the stick, while of vague and uncertain thrust, does nothing more than place him within the the store, there being no evidence to indicate that the stick was used as an implement or instrument in the burning.

Proof of the *corpus delicti* by circumstantial evidence, to be legally sufficient, need not exclude every possible theory other than that the fire was willfully and maliciously set. *Nichols v. State,* 5 Md. App. 340. And equally clear is the principle that no greater degree of certainty is required when the evidence is circumstantial rather than when it is direct, for in either case the trier of fact must be convinced beyond a reasonable doubt that the fire was willfully and maliciously set. *Nichols v. State, supra.* Where the *corpus delicti* is established, evidence of the presence of the accused in the vicinity of the fire, whether before or after its occurrence, is always relevant to establish guilt. But the mere presence of the accused at the exact scene of the fire, coupled only with a denial that he was present, does not measure up to proof beyond a reasonable doubt that the fire was willfully and maliciously set, particularly where, as here, the burned premises had been subjected to extensive vandalism, the door was wide open, people had been going in and out freely on the day of the fire depositing trash and other debris in the store, and there was no clear showing whether anyone went into the store after appellant left. In addition, there was no indication of the use of a flammable liquid, no showing of threats to destroy the property, and no effort to show the improbability that the fire had resulted from accidental or natural causes. On the record before us, we conclude that there was legally insufficient evidence to establish the *corpus delicti* since there was no satisfactory proof, as required by *Bollinger v. State, supra,* at

page 304, that the building "was burned by the willful act of some person criminally responsible for his acts and not by natural or accidental causes."

*Judgment reversed; case remanded for a new trial.*