# MIKE BROWN *v.* STATE OF MARYLAND

[No. 1056, September Term, 1977.]

*Decided June 8, 1978.*

498

The cause was argued before MOYLAN, LOWE and MASON, JJ.

*Lawrence S. Greenwald,* with whom were *Barry F. Rosen* and *Gordon, Feinblatt, Rothman, Hoffberger & Hollander* on the brief, for appellant.

*Gilbert H. Robinette, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles Wehland, State's Attorney for Howard County, Ronald L. Spahn, Deputy State's Attorney for Howard County,* and *Albert Gallatin Warfield, III, Assistant State's Attorney for Howard County,* on the brief, for appellee.

LOWE, J., delivered the opinion of the Court.

If, as it has been said, law is common sense as amended by the Legislature, it is an unfortunate fact that common sense is judicially modified as well.

At common law the crime of arson was a homeowner's protection, criminalizing the wilful and malicious burning of

the dwelling house of another. Rather than modify that common sense protection, the Legislature expanded its scope to include any building, whether owned by the person who burned it or by anyone else; [1] however, the safeguard for the innocent of requiring proof of a wilful and malicious state of mind was statutorily retained. Yet the possible consequences of that broadened scope still portend problems even for one who chooses to use fire to raze or demolish an old unwanted building on his own property, because despite an environmental or other governmental "permit", there appears to be no absolution in the statute allowing its sanctions to be waived by anyone for any purpose. The *only* hedge against conviction for innocently doing away with a dilapidated building eyesore in such a manner is the apparently substantial burden placed upon a prosecutor to prove that an accused "wilfully" burned such a building with a "malicious" intent.

Even that protection, however, has been judicially eroded over the years to such an extent that a showing of an intent to burn by the accused — even his own dilapidated building — is sufficient for a jury to convict. Wilfulness has been judicially equated with malice, and malice has been eroded to mean criminal intent. Thus we have come full circle. In disposing of an eyesore, one who elects to burn it, rather than raze it, is a felon if he merely intended to do so — because that which he intended is criminally proscribed, and he is charged with knowledge of that statutory proscription. That may sound a little scary, but if it appears absurdly improbable, let's look at the analogous case of Mike Brown.

> "Fire giveth lyght to things farre off, and burneth that which is next to it. The Court shineth to me that came not there, but singeth those who enter." [2]

— the building —

Because he caused the abandoned and derelict clubhouse at Laurel Raceway to be burned rather than razed or

---

1. See § 7 appended (Md. Code, Art. 27).
2. John Lyly, *Euphues and his England,* ii 120

otherwise demolished, Mike Brown (a Laurel officer, director and substantial stockholder) was convicted of arson. The physical facilities at Laurel Raceway had deteriorated so badly that its 1975 summer meet could not be held at its own facility. On Brown's behalf, and at his request, a Laurel administrative assistant named Patricia Ann Gorman obtained demolition bids for the clubhouse in anticipation of a major improvement of the track facilities. In light of the extensive estimates (in the vicinity of $15,000), Brown then had Ms. Gorman investigate the possibility of having the clubhouse burned by the Savage Fire Department. After initially agreeing, the Department subsequently declined because, upon looking into the situation, it determined that the proposed burning would be unsafe and environmentally unsound. Continued efforts through other fire departments were also unavailing. The building was ultimately burned (by a part-time employee and another person) at the direction of Ms. Gorman, who testified that she contracted for this extra-legal burning upon the instructions of Brown.

Seven questions are raised on appeal following Brown's conviction by a jury in the Circuit Court for Howard County.[3] The first two relate to the structure that was burned. As pointed out, that structure was a 20-year-old shell of an unused clubhouse, primarily of "[s]teel skeleton construction with a frame flooring interior and bearing walls with a built up roof". The windows (including the viewing panels) had been removed or broken, utilities had been turned off, copper piping removed and the interior severely vandalized.

---

3. "I. Did the State prove that the structure burned was a 'building' within the meaning of Article 27, § 7?
II. Did the lower court err in failing to instruct the jury that in order to convict, the structure burned had to be a 'building' at the time of the burning?
III. Under the circumstances of this case, was accomplice testimony sufficiently corroborated?
IV. Did the State prove 'malice' within the meaning of Article 27, § 7, where the only reason for the burning was to save demolition costs and not to injure anyone else or his property?
V. Did the State suppress exculpatory evidence, thereby depriving appellant of due process of law?
VI. Did the lower court err in failing to give instructions to correct an improper prosecution argument?
VII. Did the lower court err in admitting a letter where the only foundation offered for admissibility was hearsay?"

Initially, appellant calls upon us to define the term "building" as used in the arson statute, Md. Code, Art. 27, § 7, and though he would have it narrower, presses upon us as a starting point the definition extracted from *Freeform Pools v. Strawbridge,* 228 Md. 297, 301:

> "Taken in its broadest sense it can mean only an erection *intended for use and occupancy* as a habitation, or for some purpose of trade, manufacture, ornament, or use, such as a house, store, or a church." (emphasis added).

Presumably attracted by the "intended for use and occupancy" language, appellant veers south to a qualifying definition more applicably used in the arson case of *State v. Cuthrell,* 235 N. C. 173, imposing the condition that the edifice burned be "usable for some useful purpose". Assuming we will adopt his composite definition of usable *or intended for* use, appellant then points out that the State failed to provide sufficient evidence to meet either criteria, an issue which he preserved by motion for judgment of acquittal.

We are not persuaded that because of the "intended for use" language used by the Court of Appeals in *Freeform,* the buildings the Legislature intended to protect from an arsonist's torch are only those "usable" at the time of burning. In *Freeform,* a case ultimately limited to its facts, the litigant sought to encompass a swimming pool within the mechanics' lien definition of a building. Quoting from Black's Law Dictionary (4th ed. 1951), the Court there pointed out that:

> " 'The identity or difference of meaning of the words 'building', 'improvement' and 'structure' depends upon context in connection with which they are used.' " *Id.* at 301.

Quite obviously a special lien for work and materials imposed upon a building already erected or improved logically would require the use limitations imposed by the Court's definition. The Legislature, however, just as reasonably could use the term building in a statute enacted to protect real property

from wilful malicious destruction, regardless of the prospective utilitarian purpose for which the building is left to stand. It is apparent from the statutory pattern that the legislative scheme is to criminalize any uncontrolled burning. Without regard to ownership of the thing burned, § 6 of Art. 27 forbids the burning of a dwelling house or "other outhouse that is a parcel thereof"; § 7 attaches that prohibition to any other building not a parcel of a dwelling house; and, presumably to include whatever combustibles that might be missed by the foregoing sections, § 8 appears to be a miscellaneous catchall ranging from haystacks to vehicular conveyances, and including a wide range of possible combustibles, such as "any pile of planks, boards, posts, rails or other lumber; . . .". See appendix. *The American Heritage Dictionary of the English Language* definition for "building" is:

"Something that is built; a structure; an edifice."

For this Court now to speculate that by using the word "building" the Legislature intended something more restrictive than its ordinary meaning, despite its obvious effort to include in its realm every type of burnable matter in whatever form, by using specific references followed by broad generic catchall terms to guard against restrictive interpretation, would be judicially to impose restrictive interpretation upon a term of common usage generally understood to apply without regard to its present or intended use.

It is inconceivable that the protection of the statute was directed toward something less than that, or that the law was designed to exclude from its strictures any unaccountable burning of a building simply because at the moment of its destruction it is not being used and is not presently planned for use, conversion or rehabilitation. Such interpretation would leave as fair game even the homes included in the "Homestead" restoration projects in the cities, and historically valuable structures whose owners are undecided whether to rehabilitate them for posterity at some expense to themselves, or, impelled by the profit nature, raze them to

clear a potentially developable location. Such judicial imposition of unspoken legislative intentions would be absurd and we must not impute absurdity to legislative acts. *State v. Fabritz,* 276 Md. 416, 422, *cert. denied,* 425 U. S. 942.

Upon our failure to adopt this "intended for use" definition, appellant's alternative contention seems to be that the structure burned must be "usable" or "capable of use" *at the time of burning.* But our reasoning as to its utility applies regardless of tense and we are not persuaded by his Carolina authority. Moreover, witnesses for both prosecution and defense referred to that which was burned as the "clubhouse". The question then becomes, when is a clubhouse not a clubhouse? The instant case does not provide us with facts from which we could conclude that this structure was no longer a "clubhouse", and therefore was not a building. Dilapidated or not, used or unused, the "clubhouse" still stood, and the evidence further demonstrated that its steel-framed walls and roof had, just months prior to the burning, been used for the storage of various persons' property. Such standing structures fall under the protection of our statute, and their unlawful burning is proscribed despite their present, past or future purpose. If the Legislature intended to restrict the protection of buildings to those "in use" or those with a contemporaneous intended use, it could more easily have added such clarifying words than can we in retrospect, and with far more right to have done so.

— corroboration of accomplice testimony —

Rather than abandoning the need for corroboration as in the federal practice, the Court of Appeals has reaffirmed its faith in the protective device of requiring corroboration for the testimony of an accomplice, *Brown v. State,* 281 Md. 241. The degree of protection designed to shield a defendant from vindictive reprisals from, or clemency benefits for, a perjuring State's witness is substantially restricted by the fact that "[n]ot much in the way of evidence corroborative of the accomplice's testimony [is] required . . . ." *Brown, supra,* at 244. This seems especially true when the trial judge

instructs a jury that a witness is a criminal accomplice as a matter of law. In exchange for having the jury sift the case for a grain of corroborative evidence, which identifies the defendant with the perpetrators of the crime or shows his participation in it, an accused faces an implicit judicial ruling that he is culpable since there may not be an accomplice without a principal. The effect of such a ruling is to tell the jury that the defendant is a principal and so is guilty but will walk away from the crime unless they find that golden grain of corroborative evidence. Anno. Accomplices — Question of Law or Fact, 19 A.L.R.2d 1352, 1356.

Presumably, the appellant relied upon the absence of corroboration since he did not object to an instruction that Ms. Gorman was an accomplice as a matter of law and that, as such, her testimony required corroboration. Even here he overlooks the implication of guilt in the instruction and complains only that the corroborative testimony was insufficient. The difficulty is with that which had to be corroborated.

Appellant is charged as an accessory before the fact, *i.e.,* not with committing an arson but of counseling or procuring it. Md. Code, Art. 27, § 7. His crime was in his conversation — not whether he had a conversation (which he readily admits), but what was conveyed thereby. Appellant's own brief points out the very narrow line between guilt and innocence as being dependent solely upon what words were said between the accused and his admitted accomplice.[4]

> "The one respect in which the facts were disputed was whether appellant instructed Gorman to have the clubhouse burned unlawfully rather than through a fire department. Gorman testified he did, and her testimony is the only evidence linking appellant to any instruction to burn the clubhouse unlawfully. Appellant denied giving any such instruction, and insisted his instruction was to

---

4. "Frequently the law serves only to define the means and limit the extent to which man may go in achieving an otherwise legitimate goal." Snowden v. State, 33 Md. App. 659, 659-660.

> pursue burning through a fire department. Moreover, appellant testified that Gorman, herself, suggested the clubhouse be burned outside legal channels, but he refused."

In short, his words were his deeds and culpability lay in a prefix: was the fire he admittedly ordered lawful or *un*-lawful?

Corroboration of the accused's participation in so narrow and clandestine a criminal act such as appellant would have us demand, would require testimony from a witness who was privy to the conspiratorial conversation. If such were the law, few conspiratorial crimes or crimes of a counseling or procuring nature could be proven. But that which must be corroborated is not necessarily the precise criminal act itself, for such evidence would be sufficient in itself to convict. It will suffice if the independent evidence tends to establish with a satisfactory degree of cogency facts material and relevant which would justify a factfinder in crediting the accomplice's testimony. The evidence may corroborate lawful conduct if that conduct substantiates the presence of the accused at the scene of the crime. *Wright v. State,* 219 Md. 643, 649-652, *cert. denied,* 361 U. S. 851. Significantly, as pointed out in appellant's brief, the crime with which appellant is charged is not the ultimate act of arson, but rather that of procuring such result through Ms. Gorman.

> "It is important to bear in mind that the crime for which appellant was convicted was *aiding, counseling* or *procuring* the burning. Admittedly, there was corroboration as to an unlawful burning."

It follows then, all that need be corroborated is Ms. Gorman's testimony that appellant *conversed* with her regarding the burning of the building. Appellant's own testimony clearly does so:

> "Q. Mr. Brown, I believe you heard Mrs. Gorman testify that, from time to time, from about January, 1976, through March of Seventy-Six, there were

discussions as to the burning of the clubhouse which you and she had. Did you at any time give Mrs. Gorman any instructions with respect to having the clubhouse burned?

A. Yes, I did.

Q. And what were those instructions?

A. To vigorously pursue the burning of the clubhouse."

For purposes of corroboration it is of no significance that appellant completely denied either authorizing the burning without going through a fire department, or having authorized payment to the torchman. The factfinder must decide the truth or falsity of the divergent versions of the conversations which were the basis of the charge and he is free to believe all, part or none of appellant's version and/or (once corroborated) all, part or none of the accomplice's. *In Re Appeal No. 1327, Term 1975,* 32 Md. App. 478, 479-480.

"It has also been said that corroboration of a material point tending to connect the accused with the crime is sufficient for a jury to infer that the accomplice had testified truthfully even with respect to matters as to which there had been no corroboration." *Wright v. State, supra,* 219 Md. at 652.

But for a confession, it is hard to conjure better corroborative evidence of a criminal conversation procuring an unlawful burning of a building than the admission of an accused that he did indeed insist that the transgressor "vigorously pursue the burning" of that building.

— malice —

Appellant's next contention is that because the "only reason for the burning was to save demolition costs and not to injure anyone else or his property", the State failed to prove malice within the meaning of Md. Code, Art. 27, § 7. Although we reject the State's responsive argument (based upon sentence structure) that malice is not a necessary

ingredient of the procuring aspect of the arson statute but applies only to the torchman, we find the record contains sufficient evidence of malice from which a jury could have concluded such to have been a part of the appellant's mental state.

Originally, the use of the terms "wilfully and maliciously" in the arson statutes was simply a means of codifying the state of mind required for common law arson. Perkins, *Criminal Law* Ch. 3, § 2, p. 220 (2d ed. 1969); *cf. Butina v. State,* 4 Md. App. 312, *cert. denied,* 251 Md. 748. However, even when that phrase is used in a statute, it is (as it was in common law) a mistake to assume that the phrase adds any requirement of proof not included in the word "malicious" alone.

> "An intentional act creating an obvious fire hazard to [a building], done without justification, excuse or mitigation, might well be characterized as 'wilful' (a word of many meanings), and would certainly be malicious, but as the law has developed it is a mistake to assume that the phrase 'wilful and malicious,' when found in the definition of common-law arson, adds some distinct requirement not included in the word 'malicious' alone." (footnotes omitted). Perkins, *supra,* at 218.

We agree with appellant's attempt to analogize malice in arson with that in homicide, and we find that Perkins does so as well; however, there the similarity ends. Appellant contends that malice means "ill will", but Perkins clearly does not agree with that interpretation, nor do our own opinions. Perkins points out that:

> " 'The malice which is a necessary element in the crime of arson need not . . . take the form of malevolence or ill will,' just as nothing of this nature is needed for malice in the law of homicide." (footnote omitted). *Id.* at 218.

In *Evans v. State,* 28 Md. App. 640, 693, *aff'd* 278 Md. 197,

we quoted Perkins' view of malice in homicide as he compared it with its meaning in a more colloquial context:

> " 'In ordinary conversation the word 'malice' conveys some notion of hatred, grudge, ill-will, or spite, but no such idea is incorporated in the legal concept of 'malice aforethought.' . . . this crime [murder] may be perpetrated without the slightest trace of personal ill-will. . . .' "

We also noted in *Evans, supra,* that as early as 1881, no less an authority than Mr. Justice Holmes pointed out in his *Common Law* that:

> " 'It is just as much murder to shoot a sentry for the purpose of releasing a friend, as to shoot him because you hate him. Malice, in the definition of murder, has not the same meaning as in common speech, and, in view of the considerations just mentioned, it has been thought to mean *criminal intention.* . . .' " (emphasis added). *Evans, supra,* at 692-693.

We note parenthetically then, that it is just as much arson intentionally to burn a building to save money for the owner as it is to do so vindictively in order to cost the owner money.

Although the erosion of the general definition of "malice" has recently come to the fore so intently in a murder context in light of *Mullaney v. Wilbur,* 421 U. S. 684, we recognized its synonymous limitation with criminal intent as applied to the arson statute over a decade ago. Because the law presumes all burning to be accidental, in order to prove the corpus delicti of arson, the State must overcome that presumption by proving the burning was by "criminal design". *Bollinger v. State,* 208 Md. 298, 304. That, of course, is the eroded definition of malice which must be connected with the accused to effect sufficient evidence to convict. In *Hughes v. State,* 6 Md. App. 389, Chief Judge Murphy (then of our Court, now of the Court of Appeals), when discussing proof of the corpus delicti of arson, presupposed, if he did not

expressly recognize, the erosion of the "malice" definition (as condensed from the wilful and malicious statutory usage) from one including malevolence and ill will as proof prerequisites, to one of an intended burning. He noted that the clandestine nature of arson ordinarily necessitates that malice be proved by circumstantial evidence. Such proof may take many forms, and is not limited to evidence of ill will.

> "In establishing that the fire was of incendiary origin, viz., *that it was willfully and maliciously set.* . . . Incendiarism may be shown by the manner in which the fire was burned, by the presence of an odor of flammable liquid, by the fact that combustible materials or flammable liquids or their containers were found on the burned premises, *by demonstrating the improbability that the fire had resulted from accidental or natural causes, by evidence of threats to destroy the property,* by the isolation of the premises, *by the absence of any natural cause for the fire,* by the precautions taken to avoid a fire, or other facts of similar import tending to show that the fire had an incendiary origin." (emphasis added). *Hughes v. State, supra,* 6 Md. App. at 394.

Encyclopedic, as well as text authorities, recognized that the proof of wilfullness and maliciousness consists of a showing that the burning was done "knowingly and according to a purpose" as "distinguished from accidentally and negligently. . . . [T]here is no failure of proof where malice is not specifically proved, for malice may be presumed [inferred] from the wilfullness of the act of burning." 5 Am. Jur. 2d § 52.

Here there was ample evidence of motive indicative of a deliberate execution of the burning [5] including, from the

---

[5]. In her testimony, Ms. Gorman indicated that appellant was under pressure to have the clubhouse demolished expeditiously, and that attempts to have the burning accomplished through legal channels proceeded sluggishly and were ultimately unsatisfactory. She related discussions between herself and appellant about hiring someone to burn the building

appellant himself, expressions of anxiety in accomplishing the building's destruction. In addition, Ms. Gorman's testimony supported an inference that appellant was aware of the dangers involved in burning. She stated that the reason given by the fire company for declining to burn the building after having first agreed to do so was that:

> "They said it was unsafe and because of environmental control."

She further testified that appellant was inferentially cognizant of the fact that burning without a permit was itself a crime, but he considered the crime so insignificant that he was willing to take the chance.

From such testimony one could easily have concluded:

> "The doing of a wrongful act intentionally, without just cause or excuse.
>
> . . .
>
> A conscious violation of the law (or the prompting of the mind to commit it) which operates to the prejudice of another person.
>
> . . .
>
> 'A condition of the mind which shows a heart regardless of social duty and fatally bent on mischief, the existence of which is inferred from acts committed or words spoken.' . . ."

These conclusions are verbatim the first three definitions of "malice" found in Black's Law Dictionary 1146-1147 (3d ed. 1944).

Apparently appellant did not agree that the criminality of what appeared to him to be a de minimis infraction of the law should outweigh the substantial cost to the company he partially owned and whose interests he claims to have represented. Although that may be offered as a defense of

---

unlawfully and the cost of such an undertaking. Finally, the evidence demonstrated that, as a substantial stockholder, appellant would profit proportionally by whatever demolition costs savings were effected by the fire.

justification, excuse or mitigation, and despite the fact that such conjecture on balance may not seem unreasonable, the act itself as statutorily proscribed is nonetheless unlawful — if a jury finds it has been carried into fruition and is not persuaded of appellant's state of mind. It is in that context that we have reviewed the outcome of the case below. The question is not whether *we* consider the act unreasonable (*i.e.,* justified, etc.) under the circumstances; it is whether a jury which did so conclude should have been permitted to decide the question. We think the evidence was sufficient for a jury to have inferred the burning was malicious, without regard to our own views of the facts.

### — "exculpatory" evidence "suppressed" —

Appellant's last two issues of error are not so factually beguiling. He complains that four items of "exculpatory evidence" were suppressed by the State despite "repeated requests" therefor.

The items of which he complains peculiarly reflected on Ms. Gorman's credibility. In two instances, appellant contends there appeared conflicts between her grand jury testimony and her trial testimony.[6] Demand was made at the conclusion of her trial testimony as follows:

"MR. GREENWALD [Defense Counsel]: At this

---

6. Appellant's brief describes these as follows:

"Obviously, the contradiction between Gorman's trial testimony and her grand jury testimony impeaches her credibility. Also, since appellant testified at trial he never was told about any plan to demolish the building in exchange for steel, Gorman's grand jury version would have supported appellant's testimony, thereby enhancing his credibility. This would have been in sharp contrast with her trial testimony, which contradicted appellant.

. . .

Fourthly, Gorman, testifying at trial as to the dilapidated condition of the clubhouse, said 'possibly some ceiling tile . . . was left.' However, during her grand jury testimony, she testified: ' . . . I mean there was nothing left, absolutely nothing. There wasn't even ceiling tile left.' Once again, the direct contradiction between Gorman's trial testimony and her grand jury testimony impeaches her credibility. Moreover, her grand jury testimony as to the absence of ceiling tile is substantive evidence bearing on whether the clubhouse was a 'building'. See discussion *supra* at 5-7. However, the State failed to furnish this information."

time, Your Honor, I'd like to move that any statements given by Mrs. Gorman to the prosecution or the Fire Marshall or any other governmental agency relating to this case, be furnished."

Even accepting appellant's contention that this demand included grand jury testimony, it is inconceivable that an accused could interrupt a trial and demand that all possible conflicting statements be combed from the grand jury files. We pointed out in *Tobias v. State,* 37 Md. App. 605, 624, language in *Giglio v. United States,* 405 U. S. 150, 154, clearly dispositive of this issue. The Supreme Court said:

"We do not, however, automatically require a new trial whenever 'a combing of the prosecutors' files after the trial has disclosed evidence possibly useful to the defense but not likely to have changed the verdict . . . .' "

The same applies to the other two complaints of suppressed evidence, *i.e.,* a fire investigator's grand jury testimony that:

1) Ms. Gorman had counseled the "torch" in deceiving the investigators; and,
2) Ms. Gorman supported the "torch's" false statement to the investigators.

We agree with the State that the evidence allegedly suppressed was simply not so material to guilt or innocence as to warrant a new trial. See *Tobias, supra,* 37 Md. App. at 628. The matters at best were collaterally discrediting and do not go directly to the question of guilt but simply to some possible impeachment of a State's witness. As we pointed out in *Younie v. State,* 19 Md. App. 439, 460, *rev'd on other grounds,* 272 Md. 233, far more will be required to establish materiality.

To require disclosure of items, either from grand jury records or State investigative files, of such limited significance would place an impossible burden on the State, with compliance becoming progressively more difficult in relation to the complexities of a case. If *Brady v. Maryland,* 373 U. S. 83, requires this as appellant contends, it is a built-

in reversal upon demand. *Brady* was not so intended. The evidence here was neither exculpatory nor material to guilt or punishment. See *Moore v. Illinois,* 408 U. S. 786, 794.[7]

Appellant moves on to complain of the court's failure to give instructions upon what he contends was an improper jury argument.

> "He's indicated that in fact he is the owner of approximately one-half of the stock of the corporation. If he didn't spend the Ten Thousand Dollars and that becomes profit, then Five Thousand Dollars of that belongs to the — would belong to him as being the majority stockholder whether he got it in dividends or interest free loans or it stayed in the corporation because it increased his amount."

Appellant's argument is that the evidence showed that he had only 28% interest and there was *no* support for the State's position of "approximately one-half" ownership.

Appellant is wrong. An affidavit of appellant in another case, admitted into evidence here, stated that:

> "At all pertinent times he [Mike Brown] was the

---

7. We emphasize that our reasoning on this issue is strictly confined to the question of whether the withholding of witnesses' grand jury testimony constituted a due process violation under the Brady doctrine. Appellant's brief broadly claims a due process deprivation based on the suppression of exculpatory evidence, and elusively refers to the court's refusal to require "that any statements given by Mrs. Gorman to the prosecution or the Fire Marshall or any other governmental agency relating to this case, be furnished." Appellant inferably urges, without direct argument on the point, that he was entitled to inspect *all* prior statements of prosecution witnesses who had testified at trial, regardless of their adjudged materiality, for purposes of impeachment. Clearly, this goes beyond the confines of Brady. However, at trial, counsel expressly denied any intention of seeking more discovery than required by Brady, even while making such demands:

> "I'm satisfied to limit my request to witness statements to the extent they permit cross-examination for impeachment which is material but I think, as a practical matter, I have to see the witness statements before knowing what is or is not material."

The right to review such witness statements is a procedural matter that has not been constitutionally mandated, see Jencks v. United States, 353 U. S. 657; Palermo v. United States, 360 U. S. 343, 345, nor legislatively mandated in this State. Md. Rule 728; McKenzie v. State, 236 Md. 597, 602. Because of appellant's express disinclination to make any requests beyond Brady, and his failure explicitly to raise the broader question regarding the right of general inspection of prior statements in his brief, we decline to address it here. See Carr v. State, 39 Md. App. 478 (1978).

stockholder of record of 36,668 1/2 shares of the 73,337 shares of the issued and outstanding shares of stock of Laurel Harness Racing Association, Inc. ("Laurel") owned by the individual plaintiffs . . . ."

It was not improper for the State to argue reasonable and legitimate inferences from the facts in evidence, *Wilhelm v. State,* 272 Md. 404, 412; *Pierce v. State,* 34 Md. App. 654, 672, and it was not unreasonable to infer from that affidavit that appellant had a one-half interest.

Finally, appellant points out that a letter explaining why the fire department would not burn the building was improperly admitted because only improper hearsay evidence indicated that it ever came into possession of Ms. Gorman. Appellant contended that:

"Reversal is mandated unless the court is 'satisfied that there is no reasonable possibility that the evidence complained of — whether erroneously admitted or excluded — may have contributed to the rendition of the guilty verdict.' *Dorsey v. State, supra,* 276 Md. [638,] at 659 . . . , *Facyson v. State,* 35 Md. App. 202, 206-207 . . . ."

Seemingly conceding evidentiary error in admitting the letter, the State contends — and we agree — that the error was harmless. Its reasons which persuade us are succinctly stated:

"The short answer to this contention is that any error was harmless beyond a reasonable doubt as Gorman had previously testified that the reason given by the Savage Volunteer Fire Department for not burning the clubhouse was that 'it was unsafe and because of environmental control' and that the Fire Marshall's Office had inspected the clubhouse and concluded that it was an 'unsafe training device' and they would not allow the Savage Fire Department to burn it. As this testimony was admitted without objection, Appellee would submit that the subsequent admission of the letter was

harmless beyond a reasonable doubt. *Cf. Hutchinson v. State,* 36 Md. App. 58, 61-62 (1977); *Cummings v. State,* 27 Md. App. 361 (1975), *cert. den.* 276 Md. 740. The letter was only offered to show that Gorman was advised by the Savage Volunteer Fire Department that it would not burn the clubhouse. It should be noted that Appellant testified that Gorman advised him that 'the fire company no longer had an interest in burning the clubhouse'. As the refusal of the fire department to burn the clubhouse was not in dispute, Appellee believes that the admission of the letter could not have been a factor in the jury's decision, and any error was harmless beyond a reasonable doubt. *Dorsey v. State, supra.*"

*Judgment affirmed.*
*Costs to be paid by appellant.*

*APPENDIX*

Md. Code, Art. 27:

"§ 6. Dwelling or adjoining building.

Any person who wilfully and maliciously sets fire to or burns or causes to be burned or who aids, counsels or procures the burning of any dwelling house, or any kitchen, shop, barn, stable or other outhouse that is parcel thereof, or belonging to or adjoining thereto, whether the property of himself, or of another, shall be guilty of arson, and upon conviction thereof, be sentenced to the penitentiary for not more than thirty years."

"§ 7. Barn, garage, etc.; shop, factory, etc.; church, school, etc.; public bridge.

Any person who wilfully and maliciously sets fire to or burns or causes to be burned or who aids, counsels or procures the burning of any barn, stable, garage or other

building, whether the property of himself or of another, not a parcel of a dwelling house; or any shop, storehouse, warehouse, factory, mill or other building, whether the property of himself or of another; or any church, meetinghouse, courthouse, workhouse, school, jail or other public building or any public bridge; shall be guilty of a felony and upon conviction thereof, be sentenced to the penitentiary for not more than twenty (20) years."

"§ 8.   Barrack, crib, hay, corn, lumber, etc.; railway car, watercraft, vehicle, etc.

Any person who wilfully and maliciously sets fire to or burns or causes to be burned or who aids, counsels or procures the burning of any barrack, cock, crib, rick or stack of hay, corn, wheat, oats, barley or other grain or vegetable product of any kind; or any field of standing hay or grain of any kind; or any pile of coal, wood or other fuel; or any pile of planks, boards, posts, rails or other lumber; or any streetcar, railway car, ship, boat or other watercraft, automobile or other motor vehicle; or any other personal property not herein specifically named (such property being of the value of twenty-five dollars and the property of another person), shall upon conviction thereof, be sentenced to the penitentiary for not more than three (3) years."