JAMES EDWARD DEBETTENCOURT v. STATE OF
MARYLAND

[No. 1112, September Term, 1980.]

*Decided April 21, 1981.*

The cause was argued before MOYLAN, MASON and LISS, JJ.

*Alan Hilliard Legum,* with whom was *Rena E. Friedman* on the brief, for appellant.

*Alexander L. Cummings, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County,* and *Hollis Raphael, Assistant State's Attorney for Prince George's County,* on the brief, for appellee.

MOYLAN, J., delivered the opinion of the Court. LISS, J., filed a dissenting opinion at page 532 *infra.*

It would be comforting simply to announce, in the mode of Gertrude Stein, that malice is malice is malice is malice. In law as opposed to poetry, however, it takes more than an *ipse dixit* to get there. The precise issue is "Does the mental element of malice within the contemplation of the arson law embrace the same 'reckless and wanton disregard of the consequences of a dangerous act' as does the mental element of malice within the contemplation of the homicide law?" We shall hold that it does.

The propounder of this question is the appellant, James Edward DeBettencourt, who was convicted by a Prince George's County jury, presided over by Judge William H. McCullough, of statutory arson under Article 27, Section 6. That section provides:

> "Any person who wilfully and maliciously sets fire to or burns or causes to be burned or who aids, counsels or procures the burning of any dwelling house, or any kitchen, shop, barn, stable or other outhouse that is parcel thereof, or belonging to or adjoining thereto, whether the property of himself, or of another, shall be guilty of arson, and upon conviction thereof, be sentenced to the penitentiary for not more than thirty years."

The Maryland statute simply represents an enlargement of the common law felony of arson. It provides that when a dwelling house is the subject of the arson, it need not, as at the common law, be the property of another, but is the proper subject of the crime "whether the property of himself, or of another." It furthermore explicitly protects, where the common law was ambiguous, not simply dwelling houses but also "any kitchen, shop, barn, stable or other outhouse that is parcel thereof, or belonging to or adjoining thereof." It furthermore makes a principal of him who "causes to be burned or who aids, counsels or procures the burning," whereas such participation at the common law would have rendered one an accessory before the fact. In all other regards, however, the common law felony of arson and its attendant judicial interpretation over the centuries remain

unchanged. *Brown v. State,* 285 Md. 469, 403 A.2d 788; *Butina v. State,* 4 Md. App. 312, 242 A.2d 819. It is the common law mental element of malice, undisturbed by legislative modification, that is at issue here.

Counsel have commendably narrowed the focus. There is no dispute over the fact that a dwelling house, 515 Comptom Avenue in Laurel, Maryland — indeed, the home of the appellant himself [1] — burned on October 4, 1979. There is no dispute over the fact that the appellant was the incendiary agent. The only dispute is over what he had in mind when he set the torch and what legal significance that state of mind may have.

Eight witnesses testified for the State. The appellant did not take the stand and called no witnesses on his behalf. Arson investigators at the fire scene found that flammable liquid had been spread on the floor of the dwelling. They found two gasoline cans inside the house. Just before the fire broke out, two neighboring teenaged boys observed the appellant enter his house carrying what appeared to be two gasoline cans. These boys, and the father of one of them, testified that they saw the truck belonging to the appellant pull away and drive off at a time when flames were seen in the house. The proof of incendiary agency was clear.

By way of arguable explanation for such bizarre behavior, however, some of the State's evidence could have given rise to an inference of a depressed and distraught state of mind. That evidence revealed that during the time when the appellant and his family occupied the home together, he was often seen working to improve the premises and creating what was described as a lovely garden. At some time before the fire, the home had been abandoned by the appellant's wife and her child. The rooms were vacant and empty of furniture, save only a chair in the kitchen, a mattress in one bedroom and a few items of men's clothing. An embittered man may indeed have been seeking to obliterate the memory

---

1. The indictment alleged that the home was jointly owned by the appellant and his estranged wife. The pre-sentence psychiatric report bore this out. Regretfully, this fact, which would have been easily dispositive of the case, was not brought out in evidence.

of what had once been a happy home. The question is would such motivation serve to preclude the necessary element of malice? That all depends, of course, upon what "malice" means.

At both the common law and according to the statute, the fundamental predicate — the *actus reus* — is that the culprit "sets fire to or burns." The indispensable *mens rea,* at both the common law and according to the statute, is spelled out by the twin adverbial requirements that the act be done "wilfully and maliciously." It is hornbook law, not requiring even abbreviated discussion, that "wilfully" simply spells out the element of a general intent to do the thing which is done, factoring out involuntary or accidental actions and those actions done by one who is incompetent in terms of criminal responsibility. Some crimes, however, require some additional *mens rea* to aggravate or heighten the level of blameworthiness. Sometimes the possession of a "specific intent" as to the desired result of the generally intended act is the aggravating, additional *mens rea.* Sometimes (murder, arson and mayhem come immediately to mind), it is the element of "malice" that is the aggravating, additional *mens rea.*

In *Brown v. State,* 39 Md. App. 497, 388 A.2d 130, this Court erroneously concluded that over the decades the word "maliciously" had been so drained of content, within the contemplation of the arson law, as to have been subsumed within the word "wilfully." We there concluded that any showing of the general intent to do the incendiary act would be, *ipso facto,* enough to show that the act was done maliciously and was, therefore, arson. In large measure, our error flowed from our overbroad reading of the point made by all of the common law treatise writers that "malice" did not require any showing of hatred, malevolence or ill will. In *Brown v. State,* 285 Md. 469, 403 A.2d 788, the Court of Appeals reversed our holding and pointed out that "malice" did still possess a psychic content of its own, above and beyond the general intent to do the deed, notwithstanding the truism observed by all of the commentators that that

remaining additional content did not necessarily involve hatred, malevolence or ill will.

Indeed, as the common law recognized the non-necessity for hatred, malevolence or ill will, it was distinguishing motive from intention (in all of its varieties: mere general intent, additional specific intent and/or additional malicious intent). It made the point that one who intentionally did the forbidden act with the intention to achieve the forbidden consequence, was guilty whether his emotional motivation was hatred, love or sheer indifference. Professor Perkins pointed out in his *Criminal Law* (Second Edition, 1969), at p. 218:

> " 'The malice which is a necessary element in the crime of arson need not ... take the form of malevolence or ill will,' *just as nothing of this nature is needed for malice in the law of homicide.* Thus if a reward is offered to the person who first brings to the fire station the information of a house on fire, one who ignites a dwelling house for the sole purpose of claiming this reward is guilty of arson. A prisoner who sets fire to the building in which he is confined, merely for the purpose of escape, is also guilty, and this is true even if he intends only to burn a hole through which he may pass and does not intend that the building should be further damaged. Furthermore, a landlord who had burned his tenant out of house and home could not successfully establish want of malice by showing that he had no ill will toward his lessee, but had burned the house to collect the insurance." (Emphasis supplied.)

In Clark and Marshall, *The Law of Crimes,* (6th Wingersky Edition, 1958), the same point is made at p. 899:

> "If a man willfully and intentionally sets fire to and burns a house, without justification or excuse, his act is malicious, and he is none the less guilty of arson because he does not intend to consume the house, but is influenced by other motives.

Therefore, it could be successfully asserted that, if a prisoner sets fire to and burns any part of a jail, he is guilty of arson, though his intention may be, not to consume the jail, but merely to effect an escape. And where defendant was a 'fire fan' who started the fire to enjoy the excitement created, he was convicted of arson."

As we ourselves noted in *Evans v. State,* 28 Md. App. 640, 692, 349 A.2d 300, under the subheading of "Non-malicious 'malice' ":

"It has, of course, become a commonplace to lawyers that 'malice' connotes nothing which would strike a layman as 'malicious.' "

In discussing the mental element of "malice" all of the masters of the common law analogize freely between the law of arson and the law of homicide. In the context of homicide, the future Justice Holmes noted in his *Common Law* (1881) at p. 53:

"It is just as much murder to shoot a sentry for the purpose of releasing a friend, as to shoot him because you hate him. Malice, in the definition of murder, has not the same meaning as in common speech. . .

. . . [A] newly born child is laid naked out of doors, where it must perish as a matter of course. This is none the less murder, that the guilty party would have been very glad to have a stranger find the child and save it."

In that same context of homicide law, Professor Perkins spoke to the same point in his *Criminal Law* (Second Edition, 1969), at p. 35:

"In ordinary conversation the word 'malice' conveys some notion of hatred, grudge, ill-will, or spite, but no such idea is incorporated in the legal concept of 'malice aforethought.' . . . this crime may be perpetrated without the slightest trace of

personal ill-will. Illustrations include the case of a mother who kills her illegitimate offspring to hide her own disgrace, feeling at the time no hatred toward it or any other person and even having the yearnings of a mother's love toward the innocent victim — 'loving its life just less than her own reputation.' There may be added the case of the husband who killed his wife at her request, because his love was too great to permit the continuance of her suffering from a hopeless disease. Even such extreme cases as these have been held to fill every requirement of malice aforethought. . . ."

If then, the additional psychic content of "malice," above and beyond the general intent of "wilfulness," does not necessarily embrace any notion of hatred, malevolence or ill will, what then does it embrace? In the factual context of that case at least, the Court of Appeals in *Brown v. State, supra,* referred variously to the additional psychic element there as the "intention or desire to harm another . . . through doing something unlawful or otherwise unjustified" and as the "inten[tion] to bring harm to another person." We take great sustenance in *Brown v. State, supra,* as a point of departure, but are called upon to fill several interstices that were not before the Court of Appeals in *Brown.*

That case dealt with the legal sufficiency of the evidence to support a finding of malice. In our case, there is no question of legal sufficiency. Counsel for both sides agree that if "malice" does indeed embrace the wilful doing of a dangerous act recklessly disregardful of its consequences, the evidence is unquestionably there to permit the inference of such a state of mind. The limited issue before us is whether that reckless and wanton state of mind constitutes malice in one of its forms. The issue arose in the context of the following disputed jury instruction:

"In this context the meaning of the word malicious is the conscious desire to harm another through doing something unlawful or otherwise unjustified *or doing an act displaying a reckless disregard for the safety of others."* (Emphasis supplied.)

Again, counsel have very commendably narrowed the focus of the issue. The adequacy of the instruction to describe or delimit the various states of mind is not being contested. It is a clean legal question of whether malice, within the contemplation of the law of arson, consists exclusively of mental state A (the specific and affirmative intent to do harm) or also embraces the less routine, variant mental state B (the reckless doing of a dangerous act with wanton indifference to the consequences). Counsel for the appellant acknowledges that if that latter is the state of the law, the instruction in issue is adequate. Conversely, counsel for the State acknowledges that if that is not the state of the law, the instruction in issue is inadequate. The question could not be more neatly framed.

In *Brown,* the narrow issue before the Court of Appeals was whether the finding of a mere general intent to set the fire — a finding of mere wilfulness — was enough, *ipso facto,* to support a finding of malice. The Court held that it was not. There was no evidence in that case — involving the openly acknowledged and deliberate burning of an outbuilding — remotely suggesting any affirmative desire to harm anyone or anything. In the present case, by way of contrast, there was evidence that other residences lay in reasonably close proximity to the appellant's home that was burned and were inferably in possible danger if the fire had somehow spread. In *Brown,* moreover, the Court of Appeals was very careful to point out that "[a]ll the utilities had been turned off prior to the fire, minimizing the risk of a more extensive conflagration." In the present case, by way of additional contrast, the evidence showed that the utilities were still hooked up, including both a hook up for electricity and also a hook up "to a bottle of propane gas" that was used for "either heating or cooking or both." The alternative state of mind now in issue before us — the deliberate doing of a reckless and dangerous act — was simply not addressed by the Court on that occasion even by way of oblique allusion. We are treading new ground.

As we do so, we find, as the great masters of the common law found before us, the analogy to the more thoroughly

investigated field of homicide most instructive. The intentional setting of a fire is arson's analogue to homicide's intentional pulling of a trigger. Each represents the general intent to do the immediate act, the element of wilfulness, in the respective crimes. To be sufficiently blameworthy to be deemed guilty of either murder or arson, however, requires an additional or aggravating psychic element. In homicide law, this psychic aggravation in its most classic form is the intent to kill. Arson's analogue, as pointed out in *Brown,* is classically the intent to harm person or property.

In homicide law, this classic form of malice is referred to as "express malice." In its vaster experience with infinite nuances, however, the law of homicide has recognized variant forms of malice. It refers to these as the various types of "implied malice" (more sophisticated modern analysis recognizes them as forms of "equivalent malice"). One of these variant forms of malice — the analogue of the hour — is that of "the depraved heart." It is the form that establishes that the wilful doing of a dangerous and reckless act with wanton indifference to the consequences and perils involved, is just as blameworthy, and just as worthy of punishment, when the harmful result ensues, as is the express intent to kill itself. This highly blameworthy state of mind is not one of mere negligence (even enough to serve as the predicate for civil tort liability). It is not merely one even of gross criminal negligence (even enough to serve as the predicate for guilt of manslaughter). It involves rather the deliberate perpetration of a knowingly dangerous act with reckless and wanton unconcern and indifference as to whether anyone is harmed or not. The common law treats such a state of mind as just as blameworthy, just as anti-social and, therefore, just as truly murderous as the specific intents to kill and to harm.

We reason that this is true when dealing with the malice element of arson's *mens rea* just as surely as it is true when dealing with the malice element of murder's *mens rea.* Intentionally to set a fire with the express purpose "to bring harm to another," *Brown v. State, supra,* is malicious, in the most ordinary sense of that term of art. So too is it malicious intentionally to set a fire with reckless indifference to the

danger toward the persons or property of others. The aggravated or heightened blameworthiness is there in either manifestation. This aggravating or incremental *mens rea,* in any of its guises, is the thing we call "malice."

We discern, moreover, in the dicta of the Court of Appeals, a strong inclination in this direction. In *Brown v. State, supra,* they found that the evidence was not legally sufficient to support a finding of malice. In this regard, they stated very deliberately, at p. 475:

> "Nowhere does the record indicate that Brown had any intention to harm others *or that he displayed a reckless disregard for their safety."* (Emphasis supplied.)

For the appellant to prevail, he would have to dismiss the words following the disjunctive "or" as mere surplusage. We will not so treat them, for we believe both that they were carefully chosen and that they accurately reflect the state of the law in dealing with complex and variegated manifestations of arson's *mens rea.*

There is additional virtue in keeping true the analogy between malice in arson and malice in homicide. A coherent body of legal doctrine should continually strive for general principles, for a unified field theory of criminal responsibility. It should avoid Balkanizing the harms proscribed by the criminal law into isolated and inconsistent fragments wherein the same word means one thing in one context and something quite different in another context, with no sensible explanation for the disparity. Like things should not be treated in unlike ways. As we strive, therefore, for an integrated and coherent body of legal doctrine on the mental element of "malice," there is the additional benefit of not only reconciling the uses of the term within the context of the criminal law itself but also of reconciling that use with "constitutional malice" in the First Amendment context of libel law. *New York Times Company v. L. B. Sullivan,* 376 U.S. 254, 84 S. Ct. 710, 11 L. Ed. 2d 686, 95 ALR2d 1412 (1964).

We do not intimate that this necessarily exhausts the

mental states that may be malicious within the contemplation of the law of arson. We simply decide (all that is necessary for this decision) that the intentional setting of a dangerous fire with reckless and wanton disregard of the consequences in terms of the danger of bringing harm to others is part of the content of that aggravating psychic element known as malice. We do not suggest necessarily that this is all there is to malice. We simply state that there is no less than this.

The appellant's final contention is insubstantial. In the course of its deliberations, the jury sent a note to the trial judge which read: "Your Honor, could you give us the definition of 'malice' as applied to this case?" The judge returned the jury to the box and simply reread the definition of malice to them as he had given it to them earlier. He added the caution that they "should consider this instruction along with all of the other instructions that I gave you. Don't consider this in a vacuum, consider all of the instructions I gave you." The appellant now objects that the giving of this instruction alone without surrounding it and sanitizing it with all of the other instructions about burden of proof and the presumption of innocence denied him due process of law. He cites no authority for the proposition and we can imagine none. The jury was concerned with hearing again one single definition and that is what it asked. The judge gave the jury precisely the answer it sought. There is simply no point, when the jury asks what time it is, in telling them all over again how to build a clock.

*Judgment affirmed; costs to be paid by appellant.*

*Liss, J., dissenting:*

> As pointed out by the majority, the issue in this case "... is a clean legal question of whether malice, within the contemplation of the law of arson, consists exclusively of mental state A (the specific and affirmative intent to do harm) or also embraces

the less routine, variant mental state B (the reckless doing of a dangerous act with wanton indifference to the consequences)."

The majority opts for the "variant mental state B (the reckless doing of a dangerous act with wanton indifference to the consequences)."

The evidence that the majority found to be sufficient to show such "reckless doing of a dangerous act with wanton indifference to the consequences" is

"that other residences lay in reasonably close proximity to the appellant's home that was burned and were inferably in possible danger if the fire had somehow spread."

Even if we assume the majority's view of the law to be correct, there is *no* evidence whatsoever of what proximity the other residences were to appellant's home. Thus even under appellee's reading of *Brown v. State,* 285 Md. 469 (1975), the affirmance is wrong. Such surmise from an empty record does not comply with the sufficiency of the evidence requirement of *Jackson v. Virginia,* 443 U.S. 307 (1979), upon appellate review, i.e., evidence beyond a reasonable doubt of every element of the crime charged.

More pointedly, I find appellee's view of the Court of Appeals' holding to be entirely contrary to the express language of *Brown.* The Court of Appeals stated squarely that nothing short of *intended* harm to other or harm *in fact* to others will permit an inference of malice when one burns one's own building.

"... *While malice might reasonably be read into actions which are directed toward others or their property, such an inference would be unjustified in this case where the record is devoid of any evidence that Brown intended to harm or did in fact harm others* as a result of having the clubhouse burned." 285 Md. at 476-77 (Emphasis added.)

In regard to the analogy the majority draws from the malice in homicide law, it appears that the Court of Appeals

was totally unimpressed with that same reasoning. The majority quoted Perkins, *Criminal Law* (2nd ed. 1969) p. 218; so did we in *Brown v. State,* 39 Md. App. 497, 507-08 (1978). The majority quoted further from Holmes in his *Common Law* (1881) p. 53; so did we in *Brown,* 39 Md. App. at 508. The majority quoted from *Evans v. State,* 28 Md. App. 640, 693 (1975), *aff'd,* 278 Md. 197 (1976); so did we in *Brown,* 39 Md. App. at 507, *et seq.* In fact, most of the textual quotes in *Brown* were drawn from *Evans,* see *Brown,* 39 Md. App. at 507-08. That is also true in this case. It is apparent that the Court of Appeals expressly rejected this precise reasoning process, the same analogies and the same contentions, in reversing us in *Brown.*

I must respectfully dissent both as to factual sufficiency and as to the law as espoused by the Court of Appeals.